AO 91 (Rev. 11/11) Criminal Complaint                          AUSA Brian Hayes (312) 886-2447

**FILED**
5/3/2022
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| UNITED STATES OF AMERICA | |
|---|---|
| v. | CASE NUMBER: 22CR255 |
| CORTEZ PRICE | |

### CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about May 2, 2022, at Chicago, in the Northern District of Illinois, Eastern Division, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 2114(a) | assaulted a person having lawful charge, control, and custody of any money of the United States, with intent to rob, steal, or purloin such money of the United States, and robbed such person of money of the United States, and in effecting such robbery put the person's life in jeopardy by the use of a dangerous weapon. |

This criminal complaint is based upon these facts:

  X   Continued on the attached sheet.

_____
ISKAR E. SMITH
Special Agent, Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF)

Sworn to before me and signed in my presence.

Date: **May 3, 2022**        10:30am

_____
Judge's signature

City and state: Chicago, Illinois

JEFFREY COLE, U.S. Magistrate Judge
*Printed name and title*

I, ISKAR SMITH, being duly sworn, state, as follows:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and have been so employed since approximately June 2021. As part of my duties as an ATF Special Agent, I investigate violations of federal criminal law, including firearms and drug-trafficking offenses.

2. This affidavit is submitted in support of a criminal complaint alleging that on May 2, 2022, CORTEZ PRICE violated Title 18, United State Code, section 2114(a).

3. The facts set forth in this affidavit are based on my personal knowledge, my training and experience, my review of certain reports and video footage, information provided to me by various law enforcement personnel and witnesses, and the training and experience of other law enforcement officers with whom I have spoken.

4. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint, I have not included every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause.

## Background

5. PRICE has been the subject of an on-going ATF investigation regarding the illegal sale of firearms. On two prior occasions, PRICE sold firearms to an undercover law enforcement agent (the "UC"). First, on February 15th, 2022, the UC purchased a Keltec, CNC Industries, SUB-2000, 9mm, rifle from an individual later identified as CORTEZ PRICE in the Walgreens parking lot located at 11 E. 75th Street, Chicago Illinois. During this transaction, PRICE provided telephone number XXX-XXX-7285.

6. Next, on April 15, 2022, the UC purchased two firearms – a Smith and Wesson, M&P 9, 9mm pistol, and a Polymer 80, Inc., model PF940C, 9mm, pistol – from PRICE in the same

1

Walgreens parking lot located at 11 E. 75th Street, Chicago, Illinois. In arranging this transaction, PRICE communicated with the UC using cellphone number XXX-XXX-7285.

### The Robbery

7. On May 1, 2022, PRICE agreed to sell a Glock pistol with a machine gun conversion kit installed for $1,900 to the UC, who communicated with PRICE through cellphone XXX-XXX-3492.

8. May 2, 2022, in preparation for the purchase, an ATF agent provided the UC with $1900 in pre-recorded funds belonging to the United States government. Agents also outfitted the UC with an audio-video recording device. The UC instructed PRICE by text message sent to his cellphone to meet him at the same Walgreens parking lot, located at 11 E. 75th Street, Chicago, Illinois. PRICE communicated with the UC using cellphone number XXX-XXX-3492.

9. ATF agents and CPD officers conducted surveillance of the Walgreens parking lot, as well as the UC as he traveled to the parking lot in his vehicle. The transaction was also monitored by a law enforcement agent in a Customs and Border Protection helicopter unit ("CBP Air").

10. Prior to the UC arriving at the Walgreens parking lot, a gray Jeep Grand Cherokee bearing Illinois license plate DL31745 arrived and parked at the Walgreens parking lot.[1] After the UC arrived, PRICE got out of the Jeep, approached the UC's vehicle, and sat with the UC in the front passenger seat of the UC's vehicle. Law enforcement agents did not see anyone else in the Jeep. At this time, PRICE was wearing a distinctive black jacket with a red and blue

---

[1] The vehicle is not registered to PRICE, but its registration address is 2209 220th Street, Sauk Village, Illinois, which a prior police report indicates was a residence for PRICE.

pattern on the back with white lettering. PRICE also wore a yellow-hooded Lakers sweatshirt underneath the jacket.

11. Once inside the vehicle, PRICE produced a tan Glock pistol from a bag he had in his hand, with a device resembling a machine gun conversion kit installed. In the UC's presence while in the vehicle, PRICE racked the slide of the pistol several times. There was no magazine in the well of the pistol at this time.

12. The UC briefly discussed the price of the Glock with PRICE and gave him the $1900 in recorded government funds. The UC asked PRICE to show him how the Glock pistol worked, referring to the machine gun conversion function. While doing so, PRICE looked toward the UC and said words to the effect of, "yeah, I'll show you how it works."

13. While still sitting in the car with the UC, PRICE began to count the money, and looked around at the surroundings while doing so. Then, with the Glock pistol in his hand, PRICE placed a loaded magazine into the magazine well of the pistol, and racked a round into the chamber. PRICE held the weapon in front of him in his right hand at approximately the PRICE's eye level. PRICE opened the door of the UC's vehicle, got out with the $1900, and while still holding the Glock pistol, jogged back to the Jeep. PRICE departed in the Jeep at a high rate of speed north on State Street.

14. Although the UC understood in the car that he was being robbed of the $1900, fearing for his safety and the safety of the surveillance agents and others, the UC did not reveal his identity as a law enforcement agent or otherwise attempt to stop PRICE, who was armed with a loaded pistol equipped with a machine gun conversion function.

15. Nearby surveillance agents in vehicles purposefully did not follow PRICE closely in the Jeep as he fled from the Walgreens parking lot. Rather, the CBP Air unit followed the Jeep Cherokee and advised supporting agents by radio as to the Jeep's location and movements.

16. The CBP Air unit followed the Jeep Grand Cherokee to 7409 South Eggleston Avenue, Chicago, Illinois, which is located approximately less than 1 mile west from the Walgreens parking lot. The agent in the CBP Air unit did not see any objects thrown from the Jeep as it followed the vehicle to 7409 South Eggleston. PRICE parked the vehicle across the street from 7409 South Eggleston Avenue.

17. The officer in the CBP Air unit observed PRICE get out of the Jeep and enter the basement door to 7409 South Eggleston.

### Arrest of PRICE

18. After observing PRICE enter 7409 South Eggleston, law enforcement established a perimeter around the building. CPD SWAT was called to the scene. CPD SWAT called the occupants out of the basement residence. PRICE came out and was placed under arrest.

19. At the time of his arrest, PRICE possessed a cellphone with an unknown number. PRICE did not possess the Glock pistol which he brought to the Walgreens parking lot, the bag which he had used to transport the pistol, or the money he obtained from the UC.

20. One of the occupants who came out of the basement was a female identified as Individual 1. Individual 1 had a purse around her neck when she walked out of the basement. With her permission, law enforcement agents searched her purse and located $1900 in U.S. currency in denominations and with serial numbers that matched those of the recorded government funds provided by the UC to PRICE.

21. PRICE was arrested and transported to CPD 6th District. PRICE declined to make a statement to investigators when he received a *Miranda* warning.

## Conclusion

22. Based on the foregoing facts, I respectfully submit that there is probable cause to believe that on or about May 2, 2022, PRICE robbed an individual of property belonging to the United States, and in effecting such robbery puts his life in jeopardy by the use of a dangerous weapon, in violation of 18 U.S.C. § 2114(a).

_____
Iskar Smith, ATF Special Agent

SUBSCRIBED AND SWORN TO BEFORE ME
this 3rd day of May, 2022.

_____
JEFFREY COLE
UNITED STATES MAGISTRATE JUDGE

5